Matthew A. Paré, Esq., State Bar No.: 258434
**LAW OFFICE OF MATTHEW PARE, APC**
303 H Street, Suite 435
Chula Vista, CA 91910
Phone: (619) 869-4999
Fax: (619) 475-6296
e-mail: mattparelawca@gmail.com

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>SONIA CHAIDEZ and RUBEN CHAIDEZ, individually and d/b/a TRES HERMANAS; and TRES HERMANAS, INC., an unknown business entity d/b/a TRES HERMANAS,<br><br>Defendants.<br>JURY TRIAL DEMANDED | Case No.: 2:13-cv-01073-WBS-KJN<br><br>**NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS IN FAVOR OF DEFENDANTS BASED UPON LACK OF SUBJECT MATTER JURISDICTION DUE TO LACK OF STANDING; FILED CONCURRENTLY WITH DECLARATION OF ATTORNEY MATTHEW A. PARE**<br><br>*[Pursuant to Federal Rules of Civil Procedure 12(c) and 12(h)(3)]*<br><br>Date: Monday, October 21, 2014<br>Time: 2:00 p.m.<br>Judge:  Honorable William B. Shubb<br>Courtroom: 5, 14th Floor |

TO THE HONORABLE WILLIAM B. SHUBB, PLAINTIFF J & J SPORTS PRODUCTIONS, INC., AND ITS ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that on Monday, October 21, 2014, at 2:00 p.m., or as soon thereafter as this matter may be heard by the above-entitled United States District Court, located at 501 I Street, Courtroom 5, 14th Floor, Sacramento, CA 95814, defendants Sonia Chaidez, Ruben Chaidez, and Tres Hermanas, Inc. d/b/a Tres Hermanas will present their motion for a judgment in

1  their favor on the pleadings in this case, and request to dismiss the lawsuit due to lack of subject
2  matter jurisdiction based upon the plaintiff's lack of standing.  This motion is being made pursuant
3  to Federal Rules of Civil Procedure, Rule 12(c), and Rule 12(h)(3).
4       The motion is based on this Notice of Motion and Motion, the Memorandum of Points and
5  Authorities filed herewith, the declaration of attorney Matthew A. Pare, with exhibits, filed
6  concurrently, and upon such other matters as may be presented to the Court at the time of the
7  hearing.
8  DATED: September 6, 2013                     LAW OFFICE OF MATTHEW PARE, APC
9
                                                By:    /s/ Matthew A. Paré
10                                                     _____
                                                       Matthew A. Paré, Esquire
11                                                     Counsel for Defendants
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Table of Contents:**

I. INTRODUCTION……………………………………………………….5

II. ARGUMENT………………………………………………………......5

    a. Standing is a Requirement in Order for the Court to Have Subject Matter Jurisdiction……………………………………………………….5

    b. J & J Sports Productions, Inc. Does Not Have Standing in This Case Because it is not the Exclusive Licensee………………………………………………..6

    c. Legal Authority from Copyright and Patent Infringement Cases is Applicable to Cases of TV Signal Piracy……………………………………...10

    d. There is No Evidence That the Plaintiff Fulfilled its Contractual Preconditions to Bring this Lawsuit……………………………………….....11

    e. Other Cases that Have Addressed This Issue of the Possible Lack of Standing on the Part of Plaintiff in TV Signal Piracy Cases Are Distinguishable………………………………………..12

    f. The Owner of the Copyright to this Subject TV Program is Not the Plaintiff in This Case……………………………………………..…13

III. CONCLUSION………………………………………………………...14

**Table of Authorities**

U.S. Const. Art. III, section 2………………………………………………………..……….5

47 U.S.C. section 553……………………………………………………………………….10
47 U.S.C. section 605……………………………………………………………………….10

Federal Rule of Civil Procedure 12(b)(1)……………………………………………….…..6
Federal Rule of Civil Procedure 12(c)…………………………………………………..…..6
Federal Rule of Civil Procedure 12(h)(3)……………………………………………….…..6
Federal Rule of Civil Procedure 26(a)(1)(A)……………………………………………….11

*Althin CD Med., Inc. v. West Suburban Kidney Ctr.* 874 F.Supp. 837, 842 (N.D. Ill. 1994)……………………………………………………………………….....7
*Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997)…………………………5
*AsymmetRx, Inc. v. Biocare Med., LLC*, 582 F.3d 1314, 1320-21 (Fed. Cir. 2009)…..…..7
*Bennett v. Spear*, 520 U.S. 154, 162 (1997)……………………………………………….....6
*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)………………………..……….5
*Davis v. Federal Election Com'n*, 54 U.S. 724 (2008)………………………………………5
*Hollingsworth v. Perry*, 133 S.Ct. 2652, 2661 (2013)…………………………………….…6
*HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 383 (7th Cir. 2011)…………….7
*J & J Sports Productions, Inc. v. Flores*, 913 F.Supp.2d 950, 955 (E.D.Cal., 2012)……...10
*J & J Sports Productions, Inc. v. Richard D. Baylor*,
Case No. 5:13-cv-02483-JS (Document 16, filed on 7/25/2013,
in the Eastern District of Pennsylvania)…………………………………………………....12
*J & J Sports Productions, Inc. v. 4326 Kurz, Ltd.*, Civil Action No.
07-3850, 2009 WL 1886124 (E.D. Pa. June 30, 2009)……………………………...11, 12, 13
*Joe Hand Promotions, Inc. v. Conroy*, 167 F.Supp.2d 536, 539 (N.D.N.Y.2001)………...10
*Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164, 179 (3d Cir.2001)…………………..6
*Kingvision Pay Per View v. Boom Town Saloon, Inc.*, 98 F.Supp.2d 958,
964 (N.D. Ill. 2000)………………………………………………………………………...10
*Lujan v. Defenders of Wildlife*, 504 U.S. at 560-561 (1992)………………………………..6
*Nafal v. Carter*, 540 F.Supp.2d 1128, 1142-1143 (C.D. Cal. 2007)
aff'd, 388 F.Appx. 721 (9th Cir. 2010)……………………………………………………….7
*Natl Satellite Sports, Inc. v. Marzullo*, No. 96 C 6621, 1998 WL 526570,
at *4 (N.D.Ill. Aug.17, 1998)……………………………………………………………….10
*Pfizer, Inc. v. Elan Pharmaceutical Research Corp.*, 812 F.Supp. 1352,
1363-1365, 1370 (D.Del.1993)……………………………………………………………...7
*Propat Intern. Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1190-92 (Fed. Cir. 2007)…………….7
*Prostar v. Massachi*, 239 F.3d 669 (5th Cir. 2001)………………………………………..10
*Righthaven LLC v. Hoehn*, 716 F.3d 1166 (2013)………………………………….……..8
*Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996)…………………………………5
*Time Warner Cable Nat. Div. v. Bubacz*, 198 F.Supp.2d 800 (N.D.W.Va. 2001)………..10
*Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1559 (9th Cir.1987)…...5
*Worth v. Seldin*, 422 U.S. 490, 498 (1975)………………………………………………….6

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.**

### **INTRODUCTION**

This case stems from the exhibition of a television program, specifically Manny Pacquiao v. Timothy Bradley, WBO Welterweight Championship Fight Program, on Saturday, June 9, 2012, at the business establishment, Tres Hermanas.  The plaintiff in this action, J & J Sports Productions, Inc. alleges that it has the exclusive rights to the subject television program, and defendants did not pay J & J Sports Productions, Inc. for the rights to show the subject television program, but nevertheless did so at this commercial establishment.  The basis for this present motion is that the plaintiff J & J Sports Productions, Inc. lacks standing to pursue this claim.  The lack of standing results in a lack of subject matter jurisdiction, and therefore the Court must dismiss the case.

### **II.**

### **ARGUMENT**

**A.    Standing is a Requirement in Order for the Court to Have Subject Matter Jurisdiction**

Artile III, section 2 of the United States Constitution confines federal courts to the decisions of "Cases or Controversies."  U.S. Const. Art. III, section 2.  Standing to sue is an aspect of the case-or-controversy requirement.  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997).

A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction. *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1559 (9th Cir.1987); *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).  "A plaintiff must demonstrate standing for each claim he seeks to press" and " 'for each form of relief' " that is sought.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *Davis v. Federal Election*

1  *Com'n*, 54 U.S. 724 (2008).

2  To qualify as a party with standing, a litigant must first show (1) an "invasion of a legally 3 protected interest that is concrete and particularized, and actual or imminent." *Arizonans for* 4 *Official English v. Arizona*, 520 U.S. 43, 64 (1997). In other words, the litigant must seek relief for 5 an injury that affects him in a "personal and individual way," such that he has a "direct stake in the 6 outcome of the case." *Id*. Once the litigant establishes an injury sufficient for standing, he must 7 also show (2) a causal link between the claimed injury and opposing party's challenged conduct; 8 and (3) redressability of the injury by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 9 504 U.S. at 560-561 (1992); *Hollingsworth v. Perry*, 133 S.Ct. 2652, 2661 (2013). These above-10 described elements of standing from *Lujan* address the threshold issue of Constitutional standing, 11 although the notion of standing can be further limited as there are both Constitutional standing 12 requirements as well as prudential standing requirements (judicially self-imposed), in addition to 13 statutory standing requirements, and contractual standing requirements. See e.g., *Worth v. Seldin*, 14 422 U.S. 490, 498 (1975); *Bennett v. Spear*, 520 U.S. 154, 162 (1997); *Joint Stock Soc'y v. UDV* 15 *N. Am., Inc.*, 266 F.3d 164, 179 (3d Cir.2001). These other limits on standing are primarily the 16 basis upon which defendants bring this motion, as detailed *infra*.

17  Although Federal Rule of Civil Procedure 12(b)(1) contemplates a mechanism by which a 18 challenge to the subject matter jurisdiction can be raised, it is not the only vehicle. In particular, 19 Federal Rule of Civil Procedure 12(h)(3) states that "[i]f the court determines *at any time* that it 20 lacks subject-matter jurisdiction, the court must dismiss the action." (Emphasis added.) Therefore, 21 this issue can be raised at any time, and a motion for judgment on the pleadings is authorized by 22 Federal Rule of Civil Procedure 12(c) which provides that "[a]fter the pleadings are closed—but 23 early enough not to delay trial—a party may move for judgment on the pleadings."

24  **B.  J & J Sports Productions, Inc. Does Not Have Standing in This Case Because**
25  **it is not the Exclusive Licensee**

26  In television signal piracy cases and intellectual property matters at large, there is a body of 27 law which explains how a licensee must be the "exclusive" licensee in order to have standing to

sue (see cases cited *infra*).  Indeed, the plaintiff J & J Sports Productions, Inc. appears to be well aware of this requirement inasmuch as it claims the "exclusive" rights to this subject TV program in paragraph 21 of its complaint.

In *Nafal v. Carter*, 540 F.Supp.2d 1128, 1142-1143 (C.D. Cal. 2007) *aff'd*, 388 F.Appx. 721 (9th Cir. 2010) the court held that the licensee lacked standing to sue since the licensor did not grant it the sole discretion to sue a third party for unlawfully appropriating the subject matter of the license.

In *Althin CD Med., Inc. v. West Suburban Kidney Ctr.* 874 F.Supp. 837, 842 (N.D. Ill. 1994) the licensee lacked standing to sue since the licensor retained rights (1) to determine whether lawsuits should be brought, and (2) to approve the licensee transferring the subject matter of the license.  The court also stated that "[o]nce the copyright owner grants an exclusive license of particular rights, only the exclusive licensee and not the original owner can sue for later infringements of such rights."

In *AsymmetRx, Inc. v. Biocare Med., LLC,* 582 F.3d 1314, 1320-21 (Fed. Cir. 2009) the licensee did not have standing since the licensor retained rights (1) to sue, join any suit brought by the licensee and approve the settlement of any suit, and (2) to approve the licensee sublicensing the license's subject matter, and (3) the license other parties.

In *Propat Intern. Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1190-92 (Fed. Cir. 2007) the licensee did not have standing since the licensor retained a substantial measure of control over the licensee and licensed property, including (1) an equity interest in the proceeds of licensing and litigation activities, and (2) the right to veto the licensee's licensing and litigation decisions.

In *HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 383 (7th Cir. 2011) the court made clear that the fact that the license uses the phrase "exclusive license" is not dispositive as it is the agreement's substance, not the labels used, that controls the analysis of whether a licensee has standing to sue.

In *Pfizer, Inc. v. Elan Pharmaceutical Research Corp.*, 812 F.Supp. 1352, 1363-1365, 1370 (D.Del. 1993) the court held that the licensee lacked standing to sue in its own name as

...

...

1  matter of patent law where holder had not transferred substantially all rights in patent, holder
2  retained title to patent, licensee's interests in patent were not exclusive, and patentholder had not
3  granted licensee right to sue in its own name.
4       In *Righthaven LLC v. Hoehn*, 716 F.3d 1166 (2013) the court held that the plaintiff did not
5  have standing in a copyright action where the plaintiff was a non-exclusive licensee, thus the
6  dismissal for lack of standing was affirmed.
7       The rules of law articulated by the above-referenced cases can be extracted and synthesized
8  as follows: In order to have standing to sue the plaintiff (licensee) must have the sole discretion to
9  sue, the original licensor cannot have retained rights to determine if a lawsuit can be brought or to
10 license other parties, the original licensor cannot retain a financial interest in the litigation or the
11 ability to direct the litigation decisions, the licensee must have an exclusive license not just in
12 name but in substance, and all rights must be transferred to the licensee in order for the licensee to
13 have the power to sue.
14      Now, in turning to the license that was produced in this instant case and measuring it up
15 against all of these above-described dimensions, it is clear that the plaintiff J & J Sports
16 Productions, Inc. does not have the power to sue and thus the case must be dismissed.  The license
17 is attached as Exhibit A to the declaration of attorney Matthew A. Pare, filed concurrently.  The
18 license agreement states that the licensor Top Rank retained the right to license live and delayed
19 cable and satellite and pay-per-view broadcasts for specific audiences.  (License preamble and
20 paragraph 5.)
21      Plaintiff J & J Sports Productions, Inc. was only granted a qualified license to broadcast the
22 fight specifically to audiences not exceeding a certain number of persons at bars, clubs, lounges
23 and restaurants. (License preamble.)
24      The license agreement did not grant J & J Sports Productions, Inc. the right to broadcast
25 the TV event to any other audience, retaining the right exclusively for itself.  (License paragraph 5
26 – "You [J & J Sports Productions, Inc.] acknowledge the Promoter [Top Rank] shall license the
27 live and delayed cable television  and direct broadcast satellite television exhibition of the Event in

1   the Territory on a pay-per –view basis, with subsequent pay cable delayed telecasts, and that you
2   shall have no interest or participation in such exhibitions.")  In other words, the broadcast rights
3   were not exclusive.
4        The rights that Top Rank granted to J & J Sports Productions, Inc. were even further
5   limited by the license in that Top Rank retained the right to approve of any person to whom J & J
6   Sports Productions, Inc. intended to transfer the broadcast license to or any facet of it.  (License
7   paragraph 8(a) – there even needed to be written consent and approval).
8        Significantly, Top Rank also retained the right to sue anyone showing the broadcast
9   without its authorization, and required J & J Sports Productions, Inc. to "consult" with it about
10  suing anyone, "mutually agree" with it regarding who to sue, and "act jointly" with it in suing any
11  violator of the broadcast right.  (License paragraph 6.)  "Promoter [Top Rank] and Licensee [J & J
12  Sports Productions, Inc.], acting jointly, shall have the right to commence or settle any claim or
13  litigation arising out of the alleged piracy, use or proposed use of the telecast in the Territory.
14  Promoter and Licensee shall notify each other in writing and shall consult with each other and
15  mutually agree before commencing or settling any such claim or litigation in the Territory."
16  (License paragraph 6.)
17       Additionally, Top Rank retained the right to receive the proceeds from any recovery in
18  litigation.  (License paragraph 6.)  The recovery is not for J & J Sports Productions, Inc.
19  exclusively, but to be "shared" with Top Rank.  *Id*.  "Any damages, . . .  which the Promoter or
20  Licensee may recovery . . . shall constitute gross revenues from the Event, to be shared by
21  Promoter and Licensee as provided in Paragraph 1 of this Agreement."  *Id*.
22       In total, based upon the license it is clear that J & J Sports Productions, Inc. does not have
23  unfettered discretion to bring lawsuits against defendants as the plaintiff was not granted that
24  authority from Top Rank.  Top Rank did not relinquish its rights to pursue litigation and control
25  that litigation, which it must have in order for J & J Sports Productions, Inc. to have standing.
26  Basically, in order for the licensee J & J Sports Productions, Inc. to have standing it must be an
27  "exclusive" license is substance, and in this case it is not.  Therefore, the Court must dismiss J & J

Sports Productions, Inc.'s complaint due to lack of subject matter jurisdiction in light of the fact that the plaintiff does not have standing.

### C. Legal Authority from Copyright and Patent Infringement Cases is Applicable to Cases of TV Signal Piracy

It is anticipated that the plaintiff will attempt to distinguish the authority cited herein by defendants on the basis that many of these cited cases involve copyright violation claims and patent infringement claims, whereas this instant case is one for TV signal piracy (which plaintiff will attempt to portray at categorically different). The reality is, however, that these areas of the law are so closely related that courts consistently borrow laws and use the same analysis for TV signal piracy cases and other types of intellectual property claims.

For example, in analyzing the statute of limitations for federal claims of TV signal piracy under 47 U.S.C. section 605 and 47 U.S.C. section 553 one approach has been to use the statute of limitations from the Copyright Act due to the similarities. *Prostar v. Massachi*, 239 F.3d 669 (5th Cir. 2001) (using statute of limitations from the federal Copyright Act, 47 U.S.C. § 501, et seq.); *Kingvision Pay Per View v. Boom Town Saloon, Inc.*, 98 F.Supp.2d 958, 964 (N.D. Ill. 2000) (also used the statute of limitations from the Copyright Act), and *Time Warner Cable Nat. Div. v. Bubacz*, 198 F.Supp.2d 800 (N.D.W.Va. 2001) (also used the statute of limitations from the Copyright Act).

Another example of TV signal piracy law borrowing from intellectual property law is the analysis of when to impose individual liability on the part of corporate officers for these statutory violations. *J & J Sports Productions, Inc. v. Flores*, 913 F.Supp.2d 950, 955 (E.D.Cal., 2012) (describing how the genesis of that particular rule of law came from borrowing the standards set forth in copyright infringement cases).

Therefore, there is ample basis for the Court to look to intellectual property law more broadly in establishing the rules of standing for TV signal piracy cases.

///

///

1  **D.  There is No Evidence That the Plaintiff Fulfilled its Contractual Preconditions
2      to Bring this Lawsuit**
3   Courts have found that where plaintiff's status as a person aggrieved under 47 U.S.C. § 605
4   arises out of a proprietary right granted by contract and that contract further limits plaintiff's right
5   to sue, the court cannot find standing if plaintiff brings its cause of action in breach of those
6   contractual limitations.  See, *Joe Hand Promotions, Inc. v. Conroy*, 167 F.Supp.2d 536, 539
7   (N.D.N.Y.2001) and *Natl Satellite Sports, Inc. v. Marzullo*, No. 96 C 6621, 1998 WL 526570, at
8   *4 (N.D.Ill. Aug.17, 1998) as cited in *J & J Sports Productions, Inc. v. 4326 Kurz, Ltd.,* Civil
9   Action No. 07-3850, 2009 WL 1886124 at *10 (E.D. Pa. June 30, 2009).
10  In this case the plaintiff J & J Sports Productions, Inc. appears to be in breach of its
11  contract with Top Rank and there is no evidence that J & J Sports Productions, Inc. fulfilled its
12  duties to Top Rank prior to brining this lawsuit, as it must in order to have standing.  Notably, the
13  plaintiff J & J Sports Productions, Inc. did not even allege in its complaint that it fulfilled its
14  contractual preconditions to sue.  To be clear, the contractual preconditions can be found in
15  paragraph 6 of the license agreement, which require "Promoter [Top Rank] and Licensee [J & J
16  Sports Productions, Inc.], acting jointly, shall have the right to commence or settle any claim or
17  litigation arising out of the alleged piracy, use or proposed use of the telecast in the Territory.
18  Promoter and Licensee shall notify each other in writing and shall consult with each other and
19  mutually agree before commencing or settling any such claim or litigation in the Territory."  There
20  is absolutely no evidence that J & J Sports Productions, Inc. fulfilled this contractual precondition.
21  Again, J & J Sports Productions, Inc. does not do so much as to even allege that it has such
22  evidence.
23  One might ask the reasonable question as to how can defendants know that J & J Sports
24  Productions, Inc. did not notify Top Rank in writing and engage in the necessary consultation
25  before filing this lawsuit.  The answer is because no such documentation was produced by the
26  plaintiff J & J Sports Productions, Inc. with its Rule 26 initial disclosures and there is an
27  affirmative duty in federal litigation to make such a disclosure of supporting evidence, even absent

a specific discovery request.  Federal Rule of Civil Procedure 26(a)(1)(A).

In conclusion, the plaintiff J & J Sports Productions, Inc.'s right to pursue this anti-TV signal piracy lawsuit was based upon its contract with Top Rank.  J & J Sports Productions, Inc. breached that contract, however, and failed to fulfill the contractual prerequisites to bring this lawsuit.  As such, there is no standing and therefore no subject matter jurisdiction, and accordingly the Court must dismiss the lawsuit.

### E. Other Cases that Have Addressed This Issue of the Possible Lack of Standing on the Part of Plaintiff in TV Signal Piracy Cases Are Distinguishable

There are at least two other TV signal piracy cases that have touched upon the same basic issue that is presented in this motion, namely whether there is a lack of standing on the part of J & J Sports Productions, Inc. to pursue its claims for TV signal piracy.  Importantly, however, those cases are distinguishable with respect to the timing of the motion and how the issue was raised, as well as the evidence offered, and whereas the courts in those matters did not dismiss the cases the Court should in this case.

For example, in the case of *J & J Sports Productions, Inc. v. Richard D. Baylor*, Case No. 5:13-cv-02483-JS (Document 16, filed on 7/25/2013, in the Eastern District of Pennsylvania) the court denied *without prejudice* the 12(b)(1) and 12(b)(6) motion regarding the standing issue.  That motion was very early in the case (before discovery) and therefore the court was not inclined to resolve the factual dispute (e.g. whether J & J Sports Productions, Inc. consulted with Top Rank before filing the lawsuit) without any evidence on that matter.  By contrast, in this present case the matter is well into the discovery phase of the litigation and the plaintiff has produced its initial disclosures.  Any documentation in support of plaintiff's assertion of standing should have been included within its Rule 26 initial disclosures (where there is an affirmative obligation for the plaintiff to share its supporting evidence), and can also be submitted in support of its opposition to this 12(c) motion.  See Federal Rule of Civil Procedure 12(d) (stating that in a 12(c) motion that raises issues outside the pleadings the parties must be "given a reasonable opportunity to present all the material that is pertinent to the motion.").  Due to the different procedural posture as the

1. present case and the case of *J & J Sports Productions, Inc. v. Richard D. Baylor*, the Court should now rule on this issue in the present litigation.

The case of *J & J Sports Productions, Inc. v. 4326 Kurz, Ltd.,* Civil Action No. 07-3850, 2009 WL 1886124 (E.D. Pa. June 30, 2009) is similar to the case of *J & J Sports Productions, Inc. v. Richard D. Baylor, supra*.  In *4326 Kurz, Ltd.*, but the court did not rule in defendants favor regarding the issue of standing because of the "lack of factual evidence offered by defendants." *Id*. at *13.  By contrast, in this instant case there is evidence being submitted concurrently herewith (see the declaration of attorney Matthew A. Pare and the plaintiff's Rule 26 initial disclosures attached thereto), which demonstrates the lack of standing.  If the plaintiff has evidence to support its claim of standing or that it fulfilled its contractual preconditions to pursue this lawsuit (such as written consultation and notice of Top Rank) it has an obligation to produce that information in its initial disclosures of evidence, and certainly in response to this instant motion it has ample opportunity to produce that supporting evidence.

Furthermore, the case of *J & J Sports Productions, Inc. v. 4326 Kurz, Ltd.* Is also fundamentally distinguishable from the instant case and the present motion in that in this case there is a different argument raised in section B, *supra*, namely the rules of intellectual property right laws with regard to the requirement of an "exclusive" license in order to have standing, whereas in *J & J Sports Productions, Inc. v. 4326 Kurz, Ltd.* the only issue presented was the possible breach of the licensing contract by J & J Sports Productions, Inc. which called into question its right to sue (although that issue was not resolved in that case due to a lack of evidence.)

In conclusion, the other lawsuits that have touched upon the issues presented in this present motion are distinguishable and had no conclusive decisions; therefore the possible lack of standing on the part of J & J Sports Productions, Inc. is really is an issue of first impression that the Court can independently consider and must ultimately rule in favor of defendants for all of the reasons stated herein.

/ / /

1       **F.**    **The Owner of the Copyright to this Subject TV Program is Not the Plaintiff in**

2             **This Case**

3       As one final demonstration that the plaintiff J & J Sports Productions, Inc. does not have

4 standing to pursue this instant lawsuit, it is not even the owner of the copyright to the subject TV

5 program. The ownership of the copyright is in the name of Top Rank, Inc. See Exhibit B to the

6 declaration of attorney Matthew A. Pare, filed concurrently. This is relevant and significant in that

7 is further demonstrates how J & J Sports Productions, Inc. did not receive an "exclusive" license,

8 but rather Top Rank retained considerable interests (see section B, *supra*.) Plaintiff J & J Sports

9 Productions, Inc. is attempting to pursue litigation that it has no right or standing to pursue. As

10 such, this case must be dismissed.

11                                                 **III.**

12                                         **CONCLUSION**

13       For all of the above-described reasons, this Court must dismiss the lawsuit of J & J Sports

14 Productions, Inc. There is no standing, and thus no subject matter jurisdiction.

15       Respectfully submitted.

16 DATED: September 6, 2013                  LAW OFFICE OF MATTHEW PARE, APC

17                                                   By:    /s/ Matthew A. Paré

18                                                         Matthew A. Paré, Esquire
19                                                         Attorney for Defendants

20

21

22

23

24

25

26

27

28

Matthew A. Paré, Esq., State Bar No.: 258434
**LAW OFFICE OF MATTHEW PARE, APC**
303 H Street, Suite 435
Chula Vista, CA 91910
Phone: (619) 869-4999
Fax: (619) 475-6296
e-mail: mattparelawca@gmail.com

# **CERTIFICATE OF SERVICE**

      I hereby certify that on September 6, 2013, I electronically filed the foregoing with the Clerk of the Court using the ECF System which sent notification of such filing to the following:

Thomas P. Riley, Esq., State Bar No.: 194706
**LAW OFFICES OF THOMAS P. RILEY, P.C.**
First Library Square
1114 Fremont Avenue
South Pasadena, CA 91030-3227
Phone: (626) 799-9797
Fax: (626) 799-9795
e-mail: TPRLAW@att.net

Matthew A. Paré, Esq., State Bar No.: 258434
**LAW OFFICE OF MATTHEW PARE, APC**
303 H Street, Suite 435
Chula Vista, CA 91910
Phone: (619) 869-4999
Fax: (619) 475-6296
e-mail: mattparelawca@gmail.com

                                    By:    /s/ Matthew A. Paré
                                                    _____
                                                     Matthew A. Paré, Esquire